Clinton Park Development Company v. Commissioner.
Clinton Park Dev. Co. v. Commissioner
Docket No. 31718.
United States Tax Court
1952 Tax Ct. Memo LEXIS 135; 11 T.C.M. (CCH) 768; T.C.M. (RIA) 52230; July 16, 1952
*135 Held, the expenses incurred in obtaining loans to finance the construction of houses are not deductible in the year that the owner of the houses enters into contracts for their sale, which sales remain executory during the year. Dougal C. Pope, Esq., for the petitioner. John P. Higgins, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion Respondent determined deficiencies against the petitioner as follows: Year Ended
Tax
Deficiency
August 31, 1942
Income Tax
$13,167.77
August 31, 1942
Declared Value Ex-
cess-Profits Tax
3,274.65
The only question before us in this proceeding is whether the amount of $23,407.70 was deductible as expenses in the year in question, or whether this amount was a capital item to be amortized. Findings of Fact The Clinton Park Development Company, the petitioner, was organized in August, 1941 to build 533 houses in Clinton Park Addition, Harris County, Texas. The petitioner filed its income and declared value excess-profits tax return for the fiscal year ending August 31, 1942, with the collector of internal revenue for the first district of Texas. The petitioner financed *136 the construction of houses through loans from local companies which loans were guaranteed by the Federal Housing Administration. Approximately 90 per cent of the sales price of the houses was borrowed by petitioner. The petitioner corporation executed individual deeds of trust to secure individual notes for the loans on each house. The petitioner constructed the 533 houses, and in the year ending August 31, 1942, entered into contracts for sale of 507 of these houses. During the following fiscal year, the remaining 26 houses were made the subject of similar sales contracts. The pertinent provisions of these sales contracts were as follows: "THIS AGREEMENT, made in the County of Harris, State of Texas, on the day of A.D. 194 , by Clinton Park Development Company, a corporation duly created and existing under, and by virtue of the laws of the State of Texas, and having its principal offices in the City of Houston, Texas, hereinafter called Party of the First Part, and residing at Houston, Texas, hereinafter called Party of the Second Part: "WITNESSETH: "For and in consideration of the sum of $ , receipt of which is hereby acknowledged, the party of the first part hereby sells *137 to the party of the second part, and the party of the second part hereby buys from the the party of the first part, the lot and building located at Houston, Harris County, Texas, and known as Lot , Block , Clinton Park Addition, Houston, Harris County, Texas, subject to the following conditions and covenants: * * *
"4. That the party of the first part hereby sells to the party of the second part, or his assigns, the above-described premises, together with the buildings thereon, and the personal property and equipment appurtenant thereto, which includes all additions and improvements thereto, if any, that may be made during the term of this Agreement, upon and subject to the following terms and conditions: "a. The purchase price of said building and lot shall be $ , of which $ has been received and acknowledged as hereinbefore mentioned. "b. This purchase agreement, although now operative, can only be competely consumated after the sum of $ has been in hand paid by party of the second part or his assigns, to party of the first part, or his assigns, irrespective, exclusive and apart from that monthly portion applied on the Federal Housing Administration loan, together with *138 taxes, insurance and interest. That this purchase agreement is offered only upon the specific promise of the party of the second party [part] to make full and complete payment of this said sum of $ , to party of the first part, or his assigns, and is acknowledged by both parties hereto as valuable consideration therefor, and failure on part of party of the second part to make the hereinafter quoted weekly payment on this amount, as well as on his principal loan indebtedness, shall constitute a material breach of this Agreement and shall render same null and void and of no effect. "The payments on this building and lot shall be as follows: Weekly payments in the amount of $ are to be made by party of the second part to party of the first part, and party of the first part does hereby agree to promptly pay the amount of $ per month to the Federal Housing Administration, its agents or assigns, said amount of $ shall constitute the monthly installment payment on the principal indebtedness of $ , together with interest, taxes and insurance, and the party of the first part does hereby agree to furnish party of the second part with a tax and insurance dispensation statement upon the demand *139 of the party of the second part for same. "The difference between the said $ per week to be paid by the party of the second part to the party of the first part, the amount of $ per month as paid by the party of the first part on the Federal Housing Administration loan (said amount also including payment of said interest, taxes and insurance), less the deduction of interest in the amount of six per cent per annum on that sum of $ , hereinabove memtioned, due the party of the first part, shall be credited to the account of the party of the second part and is here now and hereinafter referred to as party of the second part's Option Deposit. "When party of the second part's Option Deposit shall amount to $ and after the buyer has qualified for a loan under the Federal Housing Administration requirements and has been accepted by the said Federal Housing Administration, then a General Warranty Deed, subject to the then existing mortgage of record, shall be executed by party of the first part to party of the second part. * * *
"7. The party of the second part shall have the right to possession and use of the above-described premises immediately upon the execution of this agreement, *140 which possession shall continue so long as no default or breach by party of the second part occurs. "8. Time and punctuality in making said weekly payments are material and essential ingredients and of the essence of this agreement and failure on the part of the party of the second part to make the installment payments as hereinabove set forth, and interest and other assessments promptly and literally as provided herein; or default in the performance of any of the other obligations enjoined upon party of the second party [part] by this Agreement, shall entitle party of the first part to cancel and void this Agreement and to take immediate possession of the abovedescribed premises and improvements thereon and party of the second part does hereby agree to give peaceable possession and does hereby waive notice by party of the first part of such default or breach; and all payments theretofore made by party of the second part, or assigns, under this agreement, shall thereupon be deemed and held to have been rental for the period of occupancy up to the time of forfeiture and cancellation, * * *." * * *
The purchasers were required to make a down payment of $25.00. The purchase *141 price of the houses varied, but the one sale contract in evidence discloses a sale price of $2,435. The purchaser's weekly payments were $4.90; the Option Deposit was $285. During the fiscal year ending August 31, 1943, the petitioner repossessed 68 of 507 houses. In the following year 27 houses were repossessed by petitioner. The only financial requirement to purchase a house in this development was an income of $18 per week. In its return for the fiscal year ending August 31, 1942, the petitioner sought to deduct $42,603.80 as finance charges in securing the mortgage loans. The respondent determined that $23,407.70 was not properly deductible in that fiscal year. Opinion VAN FOSSAN, Judge: The sole issue in this proceeding is whether the petitioner may deduct under the provisions of section 23 (a) (1) (A) of the Internal Revenue Code[1] $23,407.70 representing finance charges incurred in securing loans. The expense of obtaining a loan lasting more than one year and secured by a mortgage on real property, should be capitalized and amortized over the life of the loan. S. & L. Building Corporation, 19 B.T.A. 788, reversed on other grounds, *142 60 Fed. (2d) 719, reversed, 288 U.S. 406. It was there held that when the mortgaged property is sold the unamortized portion of the fees and expenses should be charged off in the year of sale. In that instance the mortgages were assumed by the purchasers. The court said in reference to a hypothetic seller, "* * * He, having shifted the burden of his mortgage to other shoulders, stands in the same situation as if he had paid it off and therefore should be allowed to deduct the remaining portion of his unamortized mortgage fees." In Metropolitan Properties Corporation, 24 B.T.A. 220, unamortized discount on bonds was held deductible in the year of sale of mortgaged property subject to the lien of the mortgage. In that case the mortgage was not assumed by the purchaser and the petitioner remained primarily liable on the loan and was required to remit the trust deed payments to the mortgagee. The sale of the mortgaged property was consummated in 1926. Deduction of the unamortized portion of brokerage fees and commissions incurred in securing a mortgage loan was allowed in the year of dissolution of the petitioner in Longview Hilton Hotel Company, et al., 9 T.C. 180. *143 No distinction was drawn between the sale of the mortgaged property and the distribution to stockholders in liquidation. The Clinton Park Development Company seeks to justify the deduction of the finance charges on the ground that it sold the mortgaged property during the fiscal year in question. However, the contracts of sale remained executory in many respects. For example, the contract became null and void if the purchaser failed to make his payments. Failure to pay an installment would allow petitioner to cancel the agreement and to treat prior payments as rent. No deed would pass until the Option Deposit aggregated a specified sum. Before receiving a deed to the property the purchaser was required to meet Federal Housing Administration requirements. The contract, by its terms, became operative at once but was consummated only after the Option Deposit amount was reached. This method of conducting its real estate business enabled petitioner to protect itself. Quick repossession could be made upon the failure of the purchaser's payments in any one week. We are of the opinion that the contract, being executory, was not a completed sale as required for the deduction of finance *144 charges. The execution of a contract of sale did not terminate the period in which the petitioner had the use of the borrowed money. The petitioner did not pass the burden of the mortgage to the purchaser as of the time the contract was signed. The petitioner corporation remained liable for the deed of trust installment payments. Unlike the Metropolitan Properties Corporation situation, the purchaser did not make payments to petitioner to be remitted to the mortgagee. In the present instance, the purchaser paid a greater sum than the amount remitted by petitioner. When the difference totaled a specified amount, the purchaser then received title to the property upon meeting Federal Housing Administration qualifications. The sale in the present instance remained executory, whereas the Metropolitan Properties Corporation case involved a completed sale of mortgaged property subject to a mortgage lien. The vendee of an executory contract may, as petitioner points out, receive an equitable title and interest in the property. In the present case the purchaser's interest included the right to possession and use of the premises as long as no breach of contract occurred. As above noted, despite *145 the transfer of possession and of an equitable interest in the property, the contract, by its terms, remained executory. For this reason it differs from the sales found in the cited cases. The burden of the mortgage was not shifted by petitioner to others. The petitioner's contention must fail and the expenses must be amortized over the life of the loan or until the mortgaged property is eventually sold to the purchaser. Decision will be entered for the respondent. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:
(a) Expenses.—
(1) Trade or business expenses.—
(A) In general.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered: traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business: and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.↩